LOBRANO, Judge.
Appellant, Jenny Lynne Tripkovich (Trip-kovich) instituted these proceedings against Gilbert Engineering Corp. (Gilbert), its insurer, Aetna Casualty and Surety (Aetna) and NRG Management Corp. (NRG) for personal injuries received as a result of an electrical shock while working as a temporary full-time employee for the Clerk of the United States District Court. Gilbert was the general contractor, and NRG, the electrical subcontractor for renovation work being done to the Clerk’s office. The trial court rejected plaintiffs demands, and she perfected this appeal.
Prior to February 23, 1981 (the date of the accident) Gilbert entered into a General Contract with the United States Government for certain renovation work in the clerk’s office. The electrical portion of that contract was sub-contracted to NRG. During the course of the renovation it was necessary for NRG to disconnect the power in the clerk’s office. This necessitated the Clerk of Court, Nelson Jones, requesting from Government Services Administration (GSA) extension cords which were to be used to supply power to the typewriters, adding machines and other office appliances. These extension cords were provided, and it is clear that they were owned, installed and maintained by the United States.
On February 23, 1981, Tripkovich was sitting at her desk with her arms encircling an IBM typewriter when she received an electrical shock. Her typewriter was plugged into an adapter, which was plugged into the “socket” end of an extension cord. The cord itself was plugged into a permanent outlet located in the Xerox room. Neither the Xerox room, nor the permanent outlet were involved in the renovation work. Tripkovich alleges that the accident was caused by the failure of Gilbert or NRG or both to provide a Ground Fault Circuit Interrupter (GFCI), which she claims would have prevented the electrical shock. Both defendants assert that they did not have any duty to provide an alternate power source to the clerk’s employees. Furthermore they claim that if such a duty existed, plaintiff still has not proved that the presence of a GFCI would have prevented the accident.
In the determination of culpability in a negligence case, we must ascertain “. . . whether the defendants] breached a legal duty imposed to protect against the particular risk involved.” Hill v. Lundin & Associates, 260 La. 542, 256 So.2d 620, 621 (1972). That duty may exist by law, contract or custom. In the instant ease, appellant argues that defendants owed her a duty by virtue of the general contract, specifically section 10.2; and by virtue of the National Electrical Code. We disagree.
Section 10.2 of the contract between Gilbert and the United States[1] provides:
*1174 “The contractor shall provide all necessary labor, materials, tools, scaffolding, drop cloths, etc., to protect the occupants and furnishings of the building and remove the same upon completion of the work.”
The trial court concluded that this provision did not place any burden on Gilbert or NRG to provide extension cords to the Clerk’s employees, or any other electrical circuitry. A review of the evidence convinces us that this interpretation is correct. NRG was performing all of its work at night and on weekends in accordance with the contract. The evidence is overwhelming that no construction work was performed during the Clerk’s normal working hours, nor were any of defendants’ employees or personnel present during the day.[2] This leads to the reasonable assumption that the government did not intend for the contractor to provide the clerk or his employees with alternate power sources during his office hours. To read such a meaning into the contract would be unreasonable.
The National Electrical Code provides, at Section 210.8(b):

“Construction Sites

All 125-volt single-phase, 15 and 20 ampere receptacle outlets which are not a part of the permanent wiring of the building or structure, and which are in use by employees shall have a ground-fault circuit-interrupter protection for personnel.”
The trial court rejected appellant’s argument that a duty was owed by virtue of the above provision. In his reasons for judgment the trial judge stated:
“Nor was any responsibility owed to the plaintiff by the defendants under the National Electrical Code, Sec. 201.8(b). This article applies to construction employees and not clerical employees uninvolved in electrical repairs.”
We agree with that interpretation, and further conclude that the requirement for a GPCI is not required where the power source (the outlet) is “part of the permanent wiring of the building.” George Webb,[3] an electrical engineering expert, and William Ames, both testified that the purpose of the above provision was to protect construction site workers, since most of the circuits used would be temporary and without fuses or circuit breakers. Based on the evidence in this case we cannot impose a duty on defendants by virtue of the National Electrical Code.
Lastly appellant argues that the general law regarding the use of electricity imposes a duty upon defendants to protect her from the injuries she sustained. Citing Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La.1983) and Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), appellant contends that the defendants in her case owe the same duty as Gulf States Utilities did in those cases. We disagree. Our Supreme Court pointed out that “electric transmission companies which maintain and employ high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable.” Hebert, supra at 114. Certainly the defendants in the present case cannot be held to the same standard. They had no control or maintenance of the electrical power supplies to the clerk’s office. Appellant’s argument is well presented, but the rationale of the Kent and Hebert cases are not applicable to this factual situation. The duty imposed in those cases arises because of the exercise of control and the ultra hazardous nature of high voltage lines. The duty imposed in one case is not necessarily required in another case.[4]
Although it is unnecessary to consider the question of whether the presence of a GFCI would have prevented the accident and/or *1175 injuries, we nonetheless agree with the trial court in that regard also. A GFCI is a device which detects a variance in the amperage between the neutral and hot wires. As testified to by the expert, when the variance exceeds 6 miliamps the GFCI will break the circuit, thus stopping the flow of electricity. However, he also testified that for a split second, prior to the tripping of the GFCI, an individual would still get shocked, even though it would only be for a very short time. In addition, the testimony also reflects that it is possible that a GFCI may not break the circuit if the flow of electricity through an individual returns through the neutral wire. In such an instance a variance would not be present, thus the GFCI would not trip.
In any case, plaintiff has not carried her burden of proving by a preponderance that the GFCI would have prevented her injuries. In attempting to prove that an omission is a cause in fact of an accident, plaintiff must show that but for the omission the accident and resulting injuries would not have occurred.
For the foregoing reasons, the judgment of the lower court is affirmed. Appellant to pay all costs of this appeal.
AFFIRMED.

. The general contract is made part of the subcontract with NRG and therefore its terms apply to both defendants.

. There is testimony that one construction worker was present in the building on the date of the accident, he was in another part of the building, and was not performing any construction work.

. Although not qualified as an expert, Mr. Ames testified to being a graduate registered architect engineer. At the time of the accident he was employed by GSA as buildings manager.

. A reading of Kent and Hebert makes this abundantly clear since the “duty” imposed in Hebert was apparently greater because of the factual differences with the Kent case.